

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2009

# Gjonomadhi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Gjonomadhi v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1872.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1872

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-3866

_____

ERGELS GJONOMADHI,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A79-296-210)
Immigration Judge: Eugene Pugliese

_____

Submitted Under Third Circuit LAR 34.1(a)
January 6, 2009

Before: CHAGARES, HARDIMAN, *Circuit Judges* and GARBIS,* *District Judge*

(Filed: February 12, 2009)
_____

OPINION OF THE COURT
_____

_____

*The Honorable Marvin J. Garbis, Senior District Judge for the United States
District Court for the District of Maryland, sitting by designation.

HARDIMAN, *Circuit Judge*.

Ergels Gjonomadhi petitions for review of a final order of removal entered by the Board of Immigration Appeals (BIA), which denied his application for asylum. We will grant the petition and remand the case to the BIA for further proceedings.

I.

Because we write exclusively for the parties, we will recount only those facts essential to our decision.

Gjonomadhi was born on October 21, 1984 in Korce, Albania. During the 1980s and 1990s, Albania experienced social, political, and economic upheaval as its government changed hands among Communist, Democratic, and Socialist regimes. At all relevant times, Gjonomadhi's parents, Skender and Fluturije, were active in pro-democracy activities. Despite enduring various hardships, including prison and internment in labor camps, Gjonomadhi's parents joined the Democratic Party in 1993, one year after it came to power in Albania.

In 1997, the Socialist Party took control. Thereafter, Gjonomadhi's parents continued their political activities with the Democratic Party by attending demonstrations and speaking out against the Socialist regime. On July 1, 1997, after returning home from a meeting where he shared his experiences with others, Skender received an anonymous death threat. Two days later, on July 3, 1997, Skender's bruised body was found hanging in a barn in a remote area. The government ruled the death a suicide. Wanting to learn

2

the truth about his father's death, Gjonomadhi began to ask questions of Skender's friends, who told him that "everything was caused by the Socialist Party." Following these inquiries, in April 1999 Fluturije received an anonymous phone call in which she was warned to tell her son "to stay quiet because he's going to have the same end as his father." Soon thereafter, Fluturije arranged for Ergels — who was then fourteen — to leave Albania on June 26, 1999; she followed him to the United States five months later.

After Gjonomadhi and Fluturije overstayed their visas, they applied for asylum. Ultimately, Fluturije was able to adjust her status to that of lawful permanent resident, but the Immigration Judge (IJ) bifurcated the removal proceedings and required Gjonomadhi to file his own application for asylum.

After a hearing, the IJ denied Gjonomadhi's application and ordered him removed to Albania, finding that country conditions had changed in Albania when the July 3, 2005 election ended Socialist rule. Because the BIA did not address the issue of changed conditions in Albania, however, we must examine the BIA's *ratio decidendi*, namely, that Gjonomadhi did not show that he suffered past persecution. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3rd Cir. 2002). The parties agree that the answer to this question turns on whether Skender was murdered by Socialists on account of his political opinion.

Our reading of the IJ's written decision leads us to conclude that the IJ never formally held that Gjonomadhi did not suffer persecution. Clearly, the IJ had problems with some of Gjonomadhi's evidence. The IJ found that Skender's death certificate was

3

not probative of the cause of death as it was silent in that regard. In addition, the IJ found unpersuasive both of the unverified letters of acquaintances who claimed that Skender was murdered by Socialists, and a newspaper article that called Skender's death a "mystery."

The IJ's analysis of the aforementioned issues is not problematic, but it is incomplete. The IJ did not address significant evidence — both written and oral — that Skender was murdered by Socialists because of his political opinion. First, the record before the IJ included Fluturije's affidavit that she submitted with the joint asylum application in which she averred that she received an anonymous phone call with the names of the people who were seen with Skender on the day of his death. She recognized one as "a strong member of the Socialist [Party] and also a notorious man guilty of many killing [sic] in 1997." She concluded by stating: "Today I could not return to Albania as I know I would be killed as I know I hold the information of a man who [h]as the power to eliminate me due to his incrimination on the death of my husband who [sic] clearly is political."

The record before the IJ also contained Gjonomadhi's affidavit that he submitted with his independent asylum application. Therein, Gjonomadhi expressly averred that his father "has already been murdered by the Socialists because of his political activities with the Democratic Party."

4

Finally, the record included a transcript of Fluturije's asylum hearing, where she testified: "My son was going to become 18. Very young. I couldn't leave him in the hands of Socialists. Kill him like they killed my husband . . . This is the reason that I left . . . I did this just to save the life of my child and not [sic] the same thing be repeated with my husband."

Absent an adverse credibility determination, the IJ had to accept the aforementioned testimony as true. *Gao*, 299 F.3d at 270*; Abdulai v. Attorney Gen.*, 239 F.3d 542, 549 (3d Cir. 2001). Assuming the truth of the Gjonomadhis' written and oral testimony — along with the strong circumstantial evidence surrounding Skender's death — we find that the IJ's conclusion that there is "in the record no compelling evidence that the respondent suffered past persecution" cannot stand.

Accordingly, we will grant the petition for review and remand the case to the BIA for further proceedings consistent with this opinion.